[Cite as *Sims v. Wooding*, 2012-Ohio-3670.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

LINDA SIMS, EXECUTRIX

    Appellant

    v.

CLIFFORD A. WOODING, et al.

    Appellees

C.A. No.     25818

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2009-10-7417

DECISION AND JOURNAL ENTRY

Dated: August 15, 2012

DICKINSON, Judge.

INTRODUCTION

**{¶1}** After Alice Wooding died, her daughter, Linda Sims, who was executor of her estate, sued Clifford Wooding to recover on two loans that Ms. Wooding had made to him. Ms. Sims also sued to recover $10,000 that she had herself lent Mr. Wooding. Following a trial to the bench, the trial court found that Ms. Wooding had forgiven her two loans to Mr. Wooding. It concluded, however, that Ms. Sims could recover the $10,000 she had lent him. Ms. Sims has appealed, arguing that the trial court incorrectly admitted hearsay evidence and incorrectly concluded that her mother's estate could not recover on the loans Ms. Wooding made. We affirm in part because the court correctly allowed the contested evidence and its finding that Ms. Wooding forgave one of the loans was not against the manifest weight of the evidence. We reverse in part because the second loan was made by Ms. Wooding's trust and, under the terms of the trust document, Ms. Wooding did not have authority to forgive that loan.

BACKGROUND

{¶2} Carl and Alice Wooding had three children, Linda Sims, Dale Wooding, and Clifford Wooding. In 1997, Ms. Wooding loaned Clifford Wooding approximately $41,000. Mr. Wooding made payments on the loan for two years, but then Ms. Wooding allegedly forgave the rest of the debt. According to Mr. Wooding, Ms. Wooding told him that, in light of assistance he had given the family, he had paid the debt in full.

{¶3} Meanwhile, in 1997, Carl and Alice Wooding created the Carl and Alice Wooding Trust. They appointed themselves trustees. In 2000, Carl Wooding died, which triggered a provision in the trust document that divided the trust into separate marital and family trusts. Ms. Wooding became the sole trustee of both trusts. Carl Wooding's death also triggered a provision in the trust document that prohibited Ms. Wooding from amending it.

{¶4} In 2003, the marital trust loaned Clifford Wooding $30,000, which he secured with a mortgage. Under the terms of the promissory note, Mr. Wooding did not have to pay the loan until he sold the mortgaged property or Ms. Wooding died. Two years later, when Mr. Wooding was suffering from a medical condition, Ms. Wooding allegedly told him that he had enough on his plate and to consider the $30,000 paid in full.

{¶5} Ms. Wooding died in November 2005. Her will named Ms. Sims as her executor. Under the trust document, at Ms. Wooding's death, the principal of the marital trust transferred to the family trust. The trust document provided that the assets of the family trust were to be divided among Ms. Wooding's children. It named KeyBank as the successor trustee of the family trust. In 2009, KeyBank relinquished its role as trustee of the family trust and transferred any interest it had in the trust assets to Ms. Wooding's estate.

**{¶6}** In October 2009, Ms. Sims sued Clifford Wooding on behalf of Ms. Wooding's estate attempting to recover on the $41,000 loan. After KeyBank relinquished its role as trustee of the family trust, Ms. Sims amended her complaint to assert a claim regarding the $30,000 loan. The parties appear to have conceded that Ms. Sims had authority to file an action on behalf of the family trust. *See* R.C. 5807.04(C)(3) (allowing a vacancy in a trusteeship of a noncharitable trust to be filled by unanimous consent of the qualified beneficiaries). Following a trial to the bench, the court found that Ms. Sims could not recover on either loan because Ms. Wooding had forgiven them. Ms. Sims has appealed. Although she raised six assignments of error, she withdrew her second assignment of error at oral argument.

HEARSAY

**{¶7}** Ms. Sims's first assignment of error is that the trial court incorrectly allowed Mr. Wooding to testify that Ms. Wooding forgave the two loans that she made to him. The trial court admitted the testimony under Rule 804(B)(3) of the Ohio Rules of Evidence. Under Rule 804(B)(3), "[t]he following are not excluded by the hearsay rule if the declarant is unavailable as a witness: . . . A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true."

**{¶8}** Ms. Sims has not disputed that Ms. Wooding was unavailable as a witness or that Ms. Wooding's statements to Mr. Wooding about forgiving the loans were so far contrary to her pecuniary interests that a reasonable person in her position would not have made them unless

they were true. *See* Evid. R. 804(A)(4), (B)(3). Rather, her argument is that Rule 804(B)(3) does not apply to a statement if the declarant's estate is a party to the action.

{¶9} There is no language in the text of Rule 804(B)(3) or the rule's staff notes that leads this Court to believe that the rule does not apply when a declarant's estate is a party to an action. While the Seventh District, considering a comparable situation, wrote that "[t]he only exception which could possibly allow for the admission of the statements attributed to a deceased donor is that found in Evid.R. 804(B)(5)," it does not appear that either of the parties in that case argued that Rule 804(B)(3) could apply and the court did not specifically analyze the applicability of Rule 804(B)(3) in its opinion. *Kovshovik v. Mandik*, 7th Dist. No. 97 CA 41, 1999 WL 783982 at *3 (Sept. 29, 1999). Accordingly, we reject Ms. Sims's argument that a party may not use Rule 804(B)(3) to admit statements just because the declarant's estate is a party to the action. Ms. Sims's first assignment of error is overruled.

## THE FIRST LOAN

{¶10} Ms. Sims's third assignment of error is that the trial court incorrectly determined that Ms. Wooding could orally modify the $41,000 loan. She has argued that the court failed to recognize that the promissory note specifically provided that no modifications to the document were binding unless they were in writing. She has also argued that there was no meeting of the minds regarding the purported modification of the loan. Ms. Sims's fifth assignment of error is that the court incorrectly found that the loan modification was supported by sufficient consideration.

{¶11} Regarding whether the parties could modify the loan, in *Fraher Transit Inc. v. Aldi Inc.*, 9th Dist. No. 24133, 2009-Ohio-336, this Court held that a written contract may be orally modified and that even a "no-oral-modification clause" may be waived. *Id.* at ¶ 13-14.

Ms. Sims has not persuaded us to reject our precedent. In *Fraher Transit*, we recognized Judge Cardozo's insight that "whenever two men contract, no limitation self-imposed can destroy their power to contract again." *Id*. at ¶ 13 (quoting *Fahlgren & Swink Inc. v. Impact Res. Inc.*, 10th Dist. No. 92AP-303, 1992 WL 385941 at *4 (Dec. 24, 1992) (quoting *Beatty v. Geggenheim Exploration Co.*, 122 N.E. 378, 381 (N.Y. 1919))). Furthermore, the Ohio Supreme Court has held that, "[s]ince a person may, if he choose, make a gift to another, which when accepted will be irrevocable, a creditor may, on receiving a part of the debt, forgive the debtor the residue[.]" *Gholson v. Savin*, 137 Ohio St. 551, 562 (1941).

{¶12} Regarding whether there was a meeting of the minds or sufficient consideration, Ms. Sims's argument, essentially, is that the trial court's findings were against the manifest weight of the evidence. When reviewing the manifest weight of the evidence in a civil case, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley v. Volkman*, __ Ohio St. 3d __, 2012-Ohio-2179, ¶ 20 (quoting *Tewarson v. Simon*, 141 Ohio App. 3d 103, 115 (9th Dist. 2001)).

{¶13} Mr. Wooding testified that he stopped making payments on the $41,000 loan because his mother told him that he had paid enough. According to Mr. Wooding, Ms. Wooding told him and his wife to "consider [the note] paid in full . . . for the work that we had provided" in taking care of his grandparents.

{¶14} The trial court found Mr. Wooding's testimony credible. We conclude that, whether Ms. Wooding's statements about forgiving Mr. Wooding's debt are viewed as an inter vivos gift, as a modification of the loan agreement, or as an offer to compensate Mr. Wooding

for his assistance with the care of his grandparents, those statements, combined with her failure to take action to recover on the note after Mr. Wooding stopped making payments, demonstrate that the trial court did not lose its way when it determined that the $41,000 debt had been cancelled. *See Perrine v. Perrine*, 9th Dist. No. 17736, 1996 WL 668996, *5 (Nov. 20, 1996) (concluding that mother's "interest in maintaining a good relationship with her . . . son and in ensuring his financial well-being was sufficient to constitute new and valid consideration in exchange for forgiveness" of debt). Ms. Sims's third and fifth assignments of error are overruled.

## THE SECOND LOAN

{¶15} Ms. Sims's fourth assignment of error is that the trial court incorrectly concluded that Ms. Wooding could forgive the $30,000 loan without adequate consideration. Her sixth assignment of error is that the court's determination that there was adequate consideration was against the manifest weight of the evidence.

{¶16} Unlike the $41,000 loan, Ms. Wooding did not make the $30,000 loan from her personal assets. Rather, she loaned the money to Mr. Wooding as trustee of the marital trust. Under Section 5.01(8) of the trust document, Ms. Wooding had the power to "abandon any trust assets or interest therein[.]" That power, however, was "exercisable . . . only in a fiduciary capacity." According to Section 5.02, "[n]o power given to the Trustee hereunder shall be construed to enable [the Trustee] . . . to purchase, exchange, or otherwise deal with or dispose of the principal or income therefrom for less than an adequate consideration in money or money's worth; . . . or to authorize loans to a person other than [the settlor] or any . . . contributor to the trust except on the basis of an adequate interest charge and with adequate security."

{¶17}  Section 5.02 of the trust document, in effect, limited Ms. Wooding's power to abandon trust property granted in Section 5.01(8) to property that was burdensome to the trust or that was of inconsequential value.  *See Standard Fed. Bank v. Staff*, 168 Ohio App. 3d 14, 2006-Ohio-3601, ¶ 34 (1st Dist.).   The $30,000 note to the trust was neither burdensome nor of inconsequential value.  The trust document also did not grant Ms. Wooding the power to make gifts of trust assets.

{¶18}  Although the trial court found that Ms. Wooding's interest in maintaining a good relationship with her son and in ensuring his financial well-being were adequate consideration for the loan modification, Ms. Wooding did not have the authority to modify the promissory note for anything other than "money or money's worth."  Because of this restriction on the type of consideration Ms. Wooding could accept for disposing of trust assets, we conclude that she did not have authority to forgive the $30,000 loan just because she wanted to maintain a good relationship with Mr. Wooding or ensure his financial well-being.  The trial court incorrectly concluded that Ms. Wooding could forgive the debt Mr. Wooding owed the trust.  Ms. Sims's fourth assignment of error is sustained.  Her sixth assignment of error is moot, and it is overruled on that basis.  *See* App. R. 12(A)(1)(c).

## CONCLUSION

{¶19}  The trial court correctly concluded that Ms. Wooding's hearsay statements could be admitted under Rule 804(B)(3) of the Ohio Rules of Evidence.  It did not lose its way when it found that Ms. Wooding had forgiven a $41,000 loan that she had made to Mr. Wooding.  The court incorrectly concluded that Ms. Wooding had authority to forgive a $30,000 loan that she made to Mr. Wooding as trustee of the marital trust.  The judgment of the Summit County

Common Pleas Court is affirmed in part and reversed in part, and this matter is remanded to the trial court so that it may enter judgment consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
CLAIR E. DICKINSON
FOR THE COURT

MOORE, J.
CONCURS.

CARR, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶20} I concur in judgment only in regard to the first, third, and fifth assignments of error.

{¶21} I respectfully dissent from the majority's opinion in regard to the fourth assignment of error. By the plain language of the trust agreement, Alice Wooding, as trustee, had the power to loan trust assets to others "on the basis of an adequate interest charge and with adequate security." She did exactly that when she loaned money from the trust to Clifford and Sharon Wooding at an interest rate of five percent and where the note was secured by a mortgage on their property. At that point, the trust held an interest in the repayment of the $30,000, plus any accumulated interest at the agreed rate.

{¶22} Article V of the trust agreement sets out twenty-seven specific powers of the trustee (in addition to all other powers inherently granted by law), which could be exercised in the discretion of the trustee. Provision 5.01(8) expressly grants to the trustee the following power "[t]o abandon any trust asset or interest therein in the discretion of the Trustee." Accordingly, Alice and Carl Wooding, as settlors of the trust, expressly provided themselves, as trustees, with the power to abandon any interest in any trust asset in the sole discretion of the trustee. That is the precise power Ms. Wooding would have been exercising by forgiving the $30,000 note. Therefore, I would conclude that the trial court did not err in determining that Alice Wooding, as trustee, could have forgiven this note. I would overrule the fourth assignment of error.

{¶23} Finally, I would decline to address the sixth assignment of error as moot.

{¶24} In conclusion, I would affirm the trial court's judgment in toto.

APPEARANCES:

TERRENCE L. SEEBERGER, Attorney at Law, for Appellant.

MARK W. BERNLOHR and SARAH B. BAKER, Attorney at Law, for Appellee.