**[Cite as *In re K.H.*, 2020-Ohio-776.]**

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: K.H.

C.A. No.     29555

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN-17-04-0262

DECISION AND JOURNAL ENTRY

Dated: March 4, 2020

CARR, Presiding Judge.

{¶1}  Appellant, C.C. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Summit County Children Services Board ("CSB").  This Court affirms.

I.

{¶2}  Mother is the biological mother of K.H., born April 14, 2017.  The child's father did not participate in the trial court proceedings and did not appeal from the judgment.

{¶3}  On April 17, 2017, CSB filed a complaint to allege that K.H. was a dependent child because Mother's three older children had been placed in the legal custody of other adults and she continued to suffer from the same parenting problems.  CSB's greatest concern was the instability in Mother's life and her tendency to rely on abusive men and other adults who take advantage of her and put her children in harm's way.  One of Mother's older children was

removed because Mother failed to protect the child from severe physical abuse in the home. K.H. was later adjudicated a dependent child and placed in the temporary custody of CSB.

{¶4} During this case, Mother engaged in counseling to help her develop insight and set boundaries to protect herself and her children from inappropriate adults. She also worked on improving her problem-solving skills. Although Mother complied with many of the requirements of the case plan for more than one year, she failed to demonstrate the ability to implement much of what she had learned. Mother continued to need the assistance of service providers to redirect her behavior and help her care for K.H. during visits. Mother also continued her unhealthy relationship with an abusive man.

{¶5} On March 26, 2019, CSB moved for permanent custody of K.H. Mother alternatively moved for legal custody of the child, as did a nonrelative who has legal custody of one of the K.H.'s older half-siblings. Following a hearing on the competing dispositional motions, the trial court found that K.H. had been in the temporary custody of CSB for at least 12 months of a consecutive 22-month period and that permanent custody was in the child's best interest. Mother appeals and raises two assignments of error.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN GRANTING PERMANENT CUSTODY UNDER R.C. 2151.414(B)(1)(D) WHEN [CSB] HAD NOT HAD AGENCY INVOLVEMENT WITH K.H. FOR AT LEAST TWENTY-TWO CONSECUTIVE MONTHS.

{¶6} Through her first assignment of error, Mother challenges the trial court's finding that the "12 of 22" prong of the permanent custody test was satisfied under R.C. 2151.414(B)(1)(d). R.C. 2151.414(B)(1)(d) provides that an agency establishes the first prong of the permanent custody test if it proves that "[t]he child has been in the temporary custody of one

or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period[.]"

{¶7} Mother makes a legal argument, that this Court has previously rejected, that the "12 of 22" provision is satisfied only if the child has been in temporary custody of a children services agency for at least 12 months of a consecutive 22-month period of agency involvement. This Court explicitly rejected this legal interpretation of the language of R.C. 2151.414(B)(1)(d) in *In re J.C.*, 9th Dist. Summit No. 28865, 2018-Ohio-2555, ¶ 10-13. This legal issue is also currently pending before the Ohio Supreme Court on a certified conflict in *In re N.M.P.*, Supreme Court Case No. 2018-1842.

{¶8} Even if this Court were to accept Mother's interpretation of R.C. 2151.414(B)(1)(d), she has failed to demonstrate any potential error under the undisputed facts of this case. At the time CSB moved for permanent custody, K.H. had been in its temporary custody for 21 months and the agency had been involved with the family for 23 consecutive months since it filed the complaint and assumed emergency temporary custody of the child. Because Mother cannot demonstrate reversible error in the trial court's "12 of 22" finding, her first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN PLACING K.H. IN THE PERMANENT CUSTODY OF CSB AS THE DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶9} Mother's second assignment of error is that the trial court's decision was against the manifest weight of the evidence. In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable

inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶10} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶11} The trial court found that the first prong of the permanent custody test was satisfied because K.H. had been in the temporary custody of CSB for at least 12 months of a consecutive 22-month period. *See* R.C. 2151.414(B)(1)(d). As explained in this Court's disposition of Mother's first assignment of error, that finding was fully supported by the evidence in the record.

{¶12} Next, the trial court found that permanent custody was in the best interest of K.H. Mother's best interest argument focuses primarily on evidence that she had made progress on the

reunification goals of the case plan. Although a parent's case plan compliance may be relevant to the child's best interest, it is not dispositive. *In re G.L.S.*, 9th Dist. Summit No. 28874, 2018-Ohio-1606, ¶ 20, citing *In re G.A.*, 9th Dist. Summit Nos. 28664, 28665, 2017-Ohio-8561, ¶ 13.

{¶13} Moreover, although Mother had made some progress on the case plan goals, several witnesses expressed concern that Mother could not provide an appropriate home for K.H. Mother had a history of relying on violent men and allowing them to control her life and put her children at risk. Despite engaging in counseling to develop insight into how these relationship patterns affected the safety of herself and her children, Mother continued her romantic relationship with the alleged father of K.H., whom she admitted was a drug abuser who was also physically violent with her. Moreover, K.H.'s alleged father had never established paternity of K.H. and refused to cooperate with CSB or have any involvement in this case.

{¶14} When determining the child's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the need for permanence in the child's life, and whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case. R.C. 2151.414(D)(1); *In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. None of the factors in R.C. 2151.414(E)(7) to (11) apply to the facts of the case.

{¶15} Mother's interaction with K.H. was initially limited to supervised visits. Mother's visits briefly expanded to unsupervised visits in her home, but the visits were later relocated and supervised by CSB due to concerns that Mother was not appropriately feeding or caring for K.H. K.H. has a swallowing disorder that requires her to eat thickened foods and she also exhibits several developmental delays. Although Mother attended most of K.H.'s medical appointments, she did not demonstrate the ability to properly feed the child or to address her other special

needs. The caseworker testified that she had to repeatedly redirect Mother's behavior during supervised visits.

{¶16} Because K.H. was only two years old at the time of the hearing, the guardian ad litem spoke on her behalf. She opined that permanent custody was in the child's best interest because Mother continued to lack insight into her problems as a parent and had never accepted responsibility for the removal of K.H. from her custody. The guardian also expressed concern that Mother had not been honest about her continuing relationship with the alleged father of K.H.

{¶17} K.H. has spent her entire life outside of Mother's custody. She was released from the hospital after her birth and placed in the emergency temporary custody of CSB and then its temporary custody. She remained in the agency's custody throughout this case and has resided with two different foster families.

{¶18} Because K.H. had spent her entire two-year life living in temporary placements, she needed a legally secure permanent placement. Mother was not prepared to provide her with a stable home and CSB had been unable to find any suitable relatives who were willing and able to do so. Although the legal custodians of one of Mother's older children filed a motion for legal custody near the end of this case, they had not established a relationship with K.H. but had met her only a few times.

{¶19} Mother has failed to demonstrate that the trial court lost its way in concluding that permanent custody was in the best interest of K.H. Mother's second assignment of error is overruled.

III.

{¶20} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.


APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE CORGAN, Assistant Prosecuting Attorney, for Appellee.

CHRISTINA BOLLMAN, Guardian ad Litem.