[Cite as *State v. Crockett*, 2014-Ohio-3512.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                     Court of Appeals No. S-13-016

　　　　Appellee                               Trial Court No. CRB 1200230

v.

Derek T. Crockett                        **DECISION AND JUDGMENT**

　　　　Appellant                             Decided: August 15, 2014

* * * * *

Thomas L. Stierwalt, Sandusky County Prosecuting Attorney,
and Norman P. Solze, Assistant Prosecuting Attorney, for appellee.

Brian A. Smith, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Sandusky County Court, District 1,

Clyde Division, following a jury trial, in which appellant, Derek Crockett, was found

guilty of one count of assault pursuant to R.C. 2903.13. For the following reasons, the

trial court's judgment is affirmed.

{¶ 2} On August 2, 2012, Bryan Koth pulled his vehicle off the street near the intersection of Maple and Main Streets in Clyde, Ohio, because his check engine light was on. While Koth was outside the vehicle, appellant parked his own vehicle in a nearby space, got out and approached Koth on foot. Words were exchanged between the two men, after which appellant hit Koth in the right ear, causing it to bleed. At some time during the altercation, appellant had Koth pinned to the hood of Koth's vehicle.

{¶ 3} While the altercation was taking place another driver, Timothy Dearth, parked his own vehicle and approached the two men. Appellant then released Koth, who left the scene and went into the nearby Clyde Police station, followed by appellant. Appellant and Koth both gave statements to Clyde Police Officer Anthony Travagliante, after which appellant was charged with one count of assault.

{¶ 4} A jury trial was held on March 14, 2014, at which testimony was heard by Travagliante, Dearth, Koth, appellant, and appellant's wife, Melissa Crockett.

{¶ 5} Travagliante testified at trial that appellant said he stopped and parked his vehicle because Koth gestured at him as their vehicles passed on the street. Appellant admitted that he exchanged angry words with Koth before hitting Koth on the side of his head. Travagliante said that appellant told him Koth had an "aggressive manner," but that Koth did not hit appellant.

{¶ 6} On cross-examination, Travagliante testified that he did not have any visible injuries. He also said that Koth was "visibly upset," while appellant remained calm. Travagliante further testified that Koth and appellant both appeared to be sober at the

2.

time. On redirect, Travagliante said that the only question remaining after interviewing both men was why appellant decided to stop and talk to Koth.

{¶ 7} Koth testified at trial that appellant's wife, Melissa, is Koth's ex-wife. Koth said that he pulled over and stopped because the engine temperature of his vehicle appeared to be high. Koth further stated that, after appellant pulled up in his own vehicle, the two "started to get into a verbal conflict," after which Koth closed the hood and got back into his vehicle. Then appellant reached into the vehicle and hit Koth on the back of his head. Appellant opened Koth's car door, took Koth out and hit him again before using his body to pin Koth to the hood of the car.

{¶ 8} Koth stated that appellant stopped hitting him when Dearth pulled up. Koth further stated that he was "cleaned up" by EMS personnel at the scene, and pictures were taken of his injuries. He reported having blurry vision, a cut ear and a "massive headache" after the incident, for which he later went to Fremont Memorial Hospital.

{¶ 9} On cross-examination Koth testified that, at the time of the incident, he and Melissa had joint custody of their two teenage children. However, a custody hearing was pending that could potentially change that arrangement. Koth denied motioning for appellant to come over to his vehicle. Koth stated that he was upset with appellant, who "physically, mentally and emotionally abused [his] children," and admitted telling appellant that he had sex with Melissa while she was married to appellant. Koth denied showing his fists or kicking appellant, however, he stated that his arm was injured when

3.

he attempted to push appellant away. Koth testified that the whole incident took 30 to 40 seconds to unfold.

{¶ 10} Dearth testified at trial that he was driving in Clyde on August 2, 2012, when he witnessed a "large frame guy" pinning a smaller man to the hood of a car, standing behind the smaller man, and hitting him on the side of his head. Dearth stated that he parked his truck, got out and walked over to the two men, at which time the altercation stopped. The two men then walked into the police station. Dearth said that the smaller man was not fighting back with his hands, however, he could not see if the smaller man was kicking the larger man from his vantage point. On cross-examination, Dearth testified that he could not hear the men talking to each other over the noise of his own truck. He further testified that he did not know either of the men, however, he gave appellant's license plate number to the police.

{¶ 11} After Dearth's testimony, Travagliante testified on recall that neither man told police that Koth kicked appellant. At that point the state rested, and appellant took the stand in his own defense.

{¶ 12} Appellant testified at trial that he was driving home on August 2, 2012, when he saw Koth driving his vehicle on the other side of the street, near the intersection of Maple and Main Streets. Appellant said that he saw Koth do "something with his hand," just before he turned his vehicle around and followed Koth. When appellant saw Koth pull his vehicle over to the side of the road and get out he parked nearby, walked over to Koth, and attempted to address issues he believed existed regarding the raising of

4.

Koth's children (appellant's stepchildren). Appellant said that, at that point, Koth called appellant vulgar names and said he was having sex with Melissa. Appellant further said that Koth "came at him" with clenched hands when appellant told Koth to watch his mouth. Appellant stated that he "pushed" Koth away, after which Koth kicked appellant in the abdomen. He then hit Koth on the side of the head, grabbed him and put him on the hood of his car.

{¶ 13} Appellant admitted that Koth "pushed his buttons" by making vulgar comments about his wife. He said he let Koth go when Dearth came up, however, he followed Koth into the police station to tell his own side of the story. On cross-examination, appellant said he did not recall telling the police that Koth kicked him, and said that he hit Koth in self-defense. Appellant also said that Koth did not really hurt him, but he punched Koth repeatedly because he was kicked and because of Koth's vulgar comments. On redirect, appellant stated that he is right-handed, and that he hit Koth on the right side of the head when Koth turned sideways to kick him.

{¶ 14} Melissa Crockett testified at trial that she is appellant's wife and Koth's ex-wife. Melissa stated that she called Koth on her cell phone the day of the altercation because she saw on Facebook that her son, Thane, who is also Koth's son, was making plans to smoke marijuana.

{¶ 15} At the close of Melissa's testimony the defense rested. Defense counsel made a motion for acquittal pursuant to Crim.R. 29, which the trial court denied. Closing remarks were then made by counsel, after which the jury received instructions from the

5.

trial court and retired to deliberate. After a short period of deliberation, a unanimous guilty verdict was returned. Sentencing was set for a later date, pending the completion of a presentence investigation report.

{¶ 16} A sentencing hearing was held on March 21, 2013, at which statements were made by the prosecutor and defense counsel. The trial court then heard evidence of Koth's medical bills and lost wages due to the attack, and reviewed appellant's prior criminal history, which included multiple traffic law violations, several OVI offenses, and two former trespass and assault cases. Thereafter, the trial court sentenced appellant to serve 180 days in jail, with 165 of the days suspended. Appellant was also ordered to pay a $500 fine, court costs, and restitution to Koth in the amount of $2,500. Appellant was placed on community control and ordered to attend anger management classes. A timely notice of appeal was filed on April 17, 2013.

{¶ 17} On appeal, appellant presents the following assignment of error:

I. Appellant's conviction was against the manifest weight of the evidence.

{¶ 18} In his sole assignment of error, appellant asserts that the jury "lost its way" and created a miscarriage of justice by convicting him of assault. In support, appellant argues that he, not Koth, was the more credible witness at trial. Accordingly, he should not have been convicted because his own testimony established that: (1) Koth was the aggressor, and (2) appellant acted in self-defense.

6.

**{¶ 19}** A manifest weight challenge questions whether the state has met its burden of persuasion. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In considering such a challenge the court of appeals, acting as a "thirteenth juror," reviews the record, weighs the evidence and all reasonable inferences, and determines whether in resolving evidentiary conflicts the jury clearly lost its way so as to create a manifest miscarriage of justice so as to warrant the extreme remedy of a reversal. *Id.* When reviewing evidence under this standard, "an appellate court generally must defer to the fact-finder's credibility determinations." *State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 34, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21.

**{¶ 20}** In this case, after reviewing the entire record that was before the trial court, and weighing all of the evidence and all reasonable inferences, we find no indication that the jury lost its way so as to create a manifest miscarriage of justice and warrant the reversal of appellant's conviction. Accordingly, appellant's sole assignment of error is not well-taken.

**{¶ 21}** The judgment of the Sandusky County Court, District 1, Clyde Division, is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

7.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.                                   _____
                                                            JUDGE

Thomas J. Osowik, J.

                                                 _____
James D. Jensen, J.                                               JUDGE
CONCUR.

                                                 _____
                                                            JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.