[Cite as *Schmauch v. Walnut Lake Campground, L.L.C.*, 2023-Ohio-1848.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| MILES SCHMAUCH, | : | CASE NO. CA2022-12-015 |
| Appellee, | : | |
| | : | O P I N I O N<br>6/5/2023 |
| - vs - | : | |
| | : | |
| WALNUT LAKE CAMPGROUND, LLC, | : | |
| Appellant. | : | |

CIVIL APPEAL FROM WASHINGTON C.H. MUNICIPAL COURT
Case No. CVI 2100956

Miles Schmauch, pro se.

Jess C. Weade, for appellant.


**S. POWELL, P.J.**

{¶ 1} Appellant, Walnut Lake Campground, LLC, appeals the decision of the Washington Court House Municipal Court granting a judgment in favor of appellee, Miles Schmauch, in the amount of $4,530.31 plus interest and costs.[1] For the reasons outlined below, we affirm the trial court's decision.

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar for purposes of issuing this opinion.

**Facts and Procedural History**

{¶ 2} On December 15, 2021, Schmauch, appearing pro se, filed a complaint against Walnut Lake seeking to recover damages for the loss he incurred after a tree fell on his camper while it was parked on Walnut Lake's property located in Jeffersonville, Fayette County, Ohio. Following a number of delays and continuances, the matter proceeded to a two-day bench trial held on October 21 and 31, 2022. The trial court heard testimony from a total of seven witnesses during the trial. This includes testimony from Schmauch, Schmauch's girlfriend/partner, Marilyn Zink, Walnut Lake's owner, Stacy Everhart, and Walnut Lake's manager, Joyce Blevins. The trial court also admitted several exhibits into evidence. The following is a summary of that testimony and evidence.

*Summary of Trial Testimony and Evidence*

{¶ 3} On April 1, 2021, Zink entered into a seasonal site contract agreement on her and Schmauch's behalf to lease a camping site located on Walnut Lake's property. Upon Zink entering into this agreement, Schmauch moved his camper, a 2004 Sportsmen Camper RV, onto Walnut Lake's property and into the camping site designated as Lot 4. Lot 4 is just one of over 100 designated camping sites located on Walnut Lake's property. At the time Zink entered into this agreement with Walnut Lake, both she and Schmauch knew a dead tree was located on Lot 4. Zink and Schmauch also knew that, if that tree were to fall, it had a good chance of striking Schmauch's camper. The same is true as it relates to Walnut Lake's owner, Everhart, and Walnut Lake's manager, Blevins. Everhart testified that she had, in fact, told both Schmauch and Zink that the tree was "bad" and that she was planning to have the tree removed as soon as possible.

{¶ 4} On August 11, 2021, a storm blew through the area that caused the dead tree located on Lot 4 to fall onto Schmauch's camper. The tree's impact with Schmauch's camper resulted in the camper being deemed a total loss. Prior to the tree falling on

Schmauch's camper, Walnut Lake had contracted with a local farmer, Mark Sanderson, to cut down any potentially dangerous trees located on Walnut Lake's property. This included the dead tree located on Lot 4. Sanderson, however, was unable to cut down the tree prior to it falling on Schmauch's camper. This was due to a variety of reasons that included Sanderson's increasingly busy schedule as a farmer during the spring planting season. This also included the inopportune placement and location of where the lessee of the neighboring Lot 5 campsite had parked her camper prior to leaving Walnut Lake's property without first providing her contact information.

{¶ 5} Walnut Lake defended against Schmauch's claim by introducing evidence that Zink had executed a release of liability form on both her and Schmauch's behalf approximately two months prior to the tree falling on Schmauch's camper. Zink, however, testified that she did not recall ever even seeing that form let alone ever actually signing it. Zink instead testified that the release form provided to the trial court by Walnut Lake was "not original" and had been "altered" because the signatures on that form had been "copied and pasted" from another document. Walnut Lake's owner, Everhart, responded that such allegations were "ludicrous" and that she "would never do something like that." Walnut Lake's manager, Blevins, similarly testified that she did not believe the signatures appearing on that form were anything other than authentic.

*The Trial Court's Decision*

{¶ 6} On November 21, 2022, the trial court issued a decision granting judgment in favor of Schmauch and against Walnut Lake in the amount of $4,530.31 plus interest and costs. The trial court reached this decision upon finding Walnut Lake owed a duty to Schmauch to "remove trees and other vegetation that would likely interfere with the safe use of the grounds," which Walnut Lake breached "by not removing the tree as promised in a timely manner" and "by failing to advise Mr. Schmauch of the situation." This was 80%

of the total damages the trial court found Schmauch sustained to his camper. The trial court reduced the amount of damages it found Schmauch was entitled to recover by 20% after finding Schmauch was "partially at fault" for the damage caused to his camper by "persisting in his request to rent Lot 4" despite the presence of a dead tree located on that lot.

{¶ 7} In so holding, the trial court determined that Walnut Lake was not absolved from liability due to release form purportedly signed by Zink on Schmauch's behalf. The trial court instead found that form was "not a defense in this action." Specifically, in reaching this decision, the trial court stated:

> [Walnut Lake] contends that it is not liable for any injury to Mr. Schmauch because he signed a form titled "Release of Liability." Mr. Schmauch testified that he does not remember signing the form.[2] To determine the validity of a release the court must consider the language of the document, the intention of the parties, and the facts the parties were aware of at the time. Considering all these factors, the court finds that the release form at issue here is not a defense in this action.

**Walnut Lake's Appeal and Single Assignment of Error**

{¶ 8} Walnut Lake now appeals the trial court's decision, raising the following single assignment of error for review.

{¶ 9} THE TRIAL COURT ERRED BY GRANTING A JUDGMENT FOR APPELL[EE], BECAUSE APPELL[EE] SIGNED A VALID WAIVER AND APPELL[EE] REFUSED TO MOVE THEIR CAMPER DESPITE BEING TOLD TO DO SO AND THE SAME WAS IN A LOCATION THAT WAS AN OPEN AND OBVIOUS HAZARD.

{¶ 10} In its single assignment of error, Walnut Lake argues the trial court's decision to grant a judgment in favor of Schmauch was against the manifest weight of the evidence. We disagree.

---

2. We believe the trial court's reference to Schmauch testifying that he did not remember signing the release form was a clerical error. This is because, as this court's summation of the trial testimony indicates, it was Zink and not Schmauch who testified to not remembering ever seeing or signing the disputed release form.

*Manifest Weight of the Evidence Standard of Review*

{¶ 11} "[T]his court typically applies [a manifest weight of the evidence standard] when reviewing civil appeals from bench trials." *Investor Support Servs., L.L.C. v. Dawoud*, 12th Dist. Warren No. CA2020-09-060, 2021-Ohio-2293, 22. "The standard of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case." *Chasteen v. Dix Rd. Prop. Mgt. LLC*, 12th Dist. Butler Nos. CA2020-04-055 and CA2020-04-056, 2021-Ohio-463, ¶ 43. That is, when considering a manifest weight challenge, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal. *Skyward Learning Servs. v. Gray*, 12th Dist. Butler No. CA2019-08-140, 2020-Ohio-1182, ¶ 10. But, even then, this court "must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21. Therefore, when the evidence is susceptible to more than one interpretation, this court must construe the evidence in a way most favorable to sustaining the trial court's judgment. *Id.*

{¶ 12} "A judgment will not be reversed as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case." *Duke Energy Ohio, Inc. v. Hamilton*, 12th Dist. Butler No. CA2021-03-023, 2021-Ohio-3778, ¶ 33. "'This power is to be invoked only in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of the appellant.'" *Investor Support Servs.*, 2021-Ohio-2293 at ¶ 23, quoting *McCartney v. Universal Electric Power Corp.*, 9th Dist. Summit No. 21643, 2004-Ohio-959, ¶ 13. Therefore, when reviewing a judgment issued following a bench trial, this court "will uphold the trial court's determination unless it appears that the record is such that no reasonable person could have concluded as the trial court did." *Total Quality Logistics, LLC v. Alliance*

*Shippers, Inc.*, 12th Dist. Clermont No. CA2020-06-031, 2021-Ohio-781, ¶ 77, citing *Garringer v. Gen. Motors Acceptance Corp.*, 12th Dist. Fayette No. CA92-06-011, 1992 Ohio App. LEXIS 6313, *2 (Dec. 14, 1992). It is only the exceptionally rare case where this occurs. *See Myocare Nursing Home, Inc. Hohmann*, 8th Dist. Cuyahoga No. 105907, 2018-Ohio-1195, ¶ 29.

### *Walnut Lake's Arguments and Analysis*

{¶ 13} Walnut Lake argues the trial court's decision granting judgment to Schmauch was against the manifest weight of the evidence for three reasons. We address each of those three reasons in turn.

### Walnut Lake's First Argument

{¶ 14} Walnut Lake initially argues the trial court's decision was against the manifest weight of the evidence because the damage caused to Schmauch's camper was "based solely" on his and Zink's own actions. However, after hearing testimony and accepting evidence from both parties, the trial court determined that the damages caused to Schmauch's camper were predominantly the fault of Walnut Lake's inaction rather than anything that Schmauch and Zink may have done. This included Walnut Lake's failure to have the tree removed from Lot 4 as promised in a timely manner. When considering the testimony elicited at trial, in particular the testimony offered by Schmauch and Zink, the trial court's decision was not against the manifest weight of the evidence. That the trial court credited Schmauch's and Zink's testimony regarding underlying circumstances that led Schmauch to park his camper on Lot 4 over the testimony elicited from Walnut Lake's owner and manager, Everhart and Blevins, does not mean the trial court's decision was against the manifest weight of the evidence. The trial court, as the trier of fact, was free to give more credence to the testimony of Schmauch and Zink when compared to that of Everhart and Blevins. That is exactly what the trial court did in this case. Therefore, Walnut Lake's

first argument lacks merit.

### Walnut Lake's Second Argument

{¶ 15} Walnut Lake also argues the trial court's decision was against the manifest weight of the evidence because the trial court "chose to ignore" the language found in R.C. 3729.15(B). Pursuant to that statute, camp operators are entitled to qualified immunity from civil liability for "any harm to a camper or visitor resulting from a risk inherent to camping." This includes the danger imposed by features of the natural world such as trees and the weather. R.C. 3729.15(A)(3)(a)(i) and (vii). Walnut Lake, however, never raised this issue to the trial court. This is likely because the qualified immunity granted to camp operators by R.C. 3729.15(B) did not become effective until May 30, 2022. This was over nine months after the tree had already fallen onto Schmauch's camper and more than five months after Schmauch had filed his complaint against Walnut Lake in this matter. Therefore, even if Walnut Lake had raised this issue with the trial court, given the statute's effective date did not take place until well after the tree had already fallen onto Schmauch's camper, Walnut Lake's claim that the trial court's decision was against the manifest weight of the evidence because the trial court "chose to ignore" the language found in R.C. 3729.15(B) also lacks merit.

### Walnut Lake's Third Argument

{¶ 16} Walnut Lake additionally argues the trial court's decision was against the manifest weight of the evidence because Zink executed a release form on her and Schmauch's behalf prior to the tree falling on Schmauch's camper, thereby absolving it from liability for the damages Schmauch sustained to his camper. However, given the trial court's decision in this case, the trial court clearly found credible Zink's testimony that the release form provided to it by Walnut Lake as evidence had been "altered" in that the signatures appearing on that form had been "copied and pasted" onto that form from some other

- 7 -

source. Again, just as with Walnut Lake's first argument, that the trial court credited Schmauch's and Zink's testimony regarding the release form allegedly signed by Zink over the testimony about that form elicited from Walnut Lake's owner and manager, Everhart and Blevins, does not mean the trial court's decision was against the manifest weight of the evidence. The trial court, as the trier of fact, was once again free to give more credence to the testimony of Schmauch and Zink regarding that release form when compared to that of Everhart and Blevins. That is once again exactly what the trial court did in this case. Therefore, Walnut Lake's third argument likewise lacks merit.

### Conclusion

{¶ 17} For the reasons outlined above, and finding no merit to any of the arguments advanced by Walnut Lake herein, Walnut Lake's single assignment of error is overruled and the trial court's decision granting a judgment in favor of Schmauch in the amount of $4,530.31 plus interest and costs is affirmed.

{¶ 18} Judgment affirmed.

PIPER and BYRNE, JJ., concur.